**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|                                                        |     |                    |
| ------------------------------------------------------ | --- | ------------------ |
| **ROBERT M. JOOST,**                                   | \|  |                    |
|                                                        | \|  |                    |
| **Plaintiff,**                                         | \|  |                    |
|                                                        | \|  |                    |
| **v.**                                                 | \|  | **Civ. No. _____** |
|                                                        | \|  |                    |
| **ENCORE BOSTON HARBOR CASINO;**                       | \|  |                    |
| **EVERETT POLICE DEPARTMENT;**                         | \|  |                    |
| **MASSACHUSETTS STATE POLICE;**                        | \|  |                    |
| **SEVERAL UNKNOWN MEMBERS OF**                         | \|  |                    |
| **THE EVERETT AND MASSACHUSETTS**                      | \|  |                    |
| **STATE POLICE DEPARTMENTS,**                          | \|  |                    |
|                                                        | \|  |                    |
| **Defendants.**                                        | \|  |                    |

# COMPLAINT

## I. PARTIES

1.    Plaintiff Robert M. Joost is a resident of Boston, Massachusetts who is 82 years old, retired, and a U.S. Army Veteran who regularly is seen by doctors at the Massachusetts Veterans Administration for several health-related issues.

2.    Encore Boston Harbor Casino (Encore) is a casino in Everett, MA believed to be legally licensed and registered as Wynn MA, LLC, that said casino was formerly owned by Wynn, who sold their interest to Realty Income, who then

1

leased said casino back to Wynn. According to the Secretary of State's corporation records, Wynn MA, LLC has a registered agent named C T Corporation, 155 Federal St. Suite 700, Boston MA 02110. The Massachusetts Gaming Commission's website says that Wynn MA LLC is the licensed operator of Encore Boston Harbor Casino.

3.     The Everett Police Department is a municipal government agency in the Commonwealth of Massachusetts and a full-service law-enforcement agency.

4.     The Massachusetts State Police is a state government agency and the primary statewide law enforcement organization of the Commonwealth of Massachusetts. It is believed that it operates under the Commonwealth's Executive Office of Public Safety and Security.

5.     Several Unknown Members of the Everett and Massachusetts State Police departments are police members of those departments who were believed working a "detail" during the incident mentioned in this complaint and were being indirectly paid as agents for both Encore and their respective police departments. Although their particular names are unknown at this time, during the course of this action their names will become discoverable and will be incorporated into this complaint.

## II. JURISDICTION

2

6.    Plaintiff invokes the Court's jurisdiction pursuant to 42 U.S.C § 1983 (civil rights), 28 U.S.C. §§ 2201 and 2202 (declaratory relief), the Court's supplemental and pendent jurisdiction pursuant to 28 U.S.C. § 1367, and the constitutions and laws of the United States and the Commonwealth of Massachusetts.

### III.  FACTS

7.    Plaintiff is 82 years old, served in the United States Army in the early 1960s and was honorably discharged after having served in Korea with the First Cavalry Division near the Demilitarized Zone. He is frequently under the care of several doctors at the Veterans Administration hospitals in Massachusetts, suffers from, *inter alia*, bronchiectasis requiring the carrying of a "rescue inhaler", has suffered two TIAs (mini strokes), a syncope, and has broken his hip, requiring surgery and the implantation of several metal rods in his hip and upper leg.

8.    Plaintiff has visited Encore on several hundreds of occasions since its opening in 2019. He is familiar and friendly with many of its staff and its patrons and has always had a cordial relationship with staff and patrons.

9.    On or about May 30, 2026 in the early afternoon. Plaintiff attempted to enter Encore through one of its entry points.  Doing so required patrons to allegedly pass through some sort of a "metal detector", which Plaintiff had done on all his prior entries.

3

10.    A security guard for the Casino barred Plaintiff from entering the casino floor, indicating to Plaintiff that he had set off the "metal detector" and that Plaintiff needed to go through a so-called "second screening".

11.    Plaintiff became frustrated and aggravated with this demand and told the security guard that if he was being denied entrance then he would leave. Plaintiff turned around and left, proceeding outside to the area where the casino shuttle would take him to South Station in Boston.

12.    Within a short time, while standing outside the casino, the shuttle bus came, passengers disembarked, and Plaintiff followed other patrons into the shuttle. Thereupon, as Plaintiff was walking up the bus's steps, someone began yelling to him outside the bus and, to the best of Plaintiff's recollection, appeared to put a hand on his back or arm in a restraining manner. An Everett policeman and a casino security guard ordered him off the shuttle bus.

13.    Plaintiff obeyed the order to step off the bus. Thereupon several other policemen and security personnel formed a semi-ring around him outside the bus in a menacing manner. The police appeared to be both Everett and State police, one of whom had a canine. There was at least one Encore security staff present who actively partook in the following actions.

14. The lead Everett policeman in the following incident had a tag on his uniform that identified himself as a detective. He told Plaintiff that Plaintiff had set off a "metal detector" when trying to enter the casino and he indicated that Encore personnel and the police wanted to know why, further indicating that said so-called "metal detector" alerted to a "gun". Plaintiff said he did not possess a gun. The detective said they wanted to further investigate the matter, but Plaintiff indicated that he wanted to just leave. The detective and several other policemen, along with Encore security personnel, informed Plaintiff that he was not free to leave.

15. The police and security personnel told Plaintiff that they wanted him to cooperate in further investigation. Plaintiff indicated that he would not, that he just wanted to leave, that they were restraining him against his will. The Detective, other policemen, and security staff then began intimidating and harassing Plaintiff, trying to make him cooperate to their liking, asking Plaintiff what he had in his pockets. While not directly answering the interrogators questions, Plaintiff responded that he had lots of metal inside his body and carried metal medical equipment for health issues, among other metal paraphernalia that most people carried.

16. The detective ordered Plaintiff to hand over Plaintiff's driver's license, which Plaintiff eventually did. The detective then read off information from the license into a radio.

17.    During all the time mentioned above outside the shuttle bus, casino patrons were watching this episode and staring at Plaintiff. The shuttle bus that Plaintiff had boarded, but was forcefully ordered off, left.

18.    Plaintiff asked the police if he was under arrest, but police said he was not. Plaintiff told the police that they were restraining him from leaving and they indicated that they were conducting an investigation and he wasn't free to leave. Thereupon, Plaintiff called a lawyer. Upon getting a lawyer on the phone, Plaintiff handed his phone to the detective, who then spoke with the lawyer.

19.    All of the police on the scene and the casino security personnel persistently and continuously kept harassing, intimidating and embarrassing Plaintiff in order to seemingly get him to cooperate in whatever they were allegedly investigating. To the best of Plaintiff's recollection, this episode continued for approximately 15 minutes from start to end.

20.    At the end of the period noted in the previous paragraph, the detective handed Plaintiff back his driver's license and told him that he was free to leave. At that point a security person told Plaintiff that he was barred from the casino's property. Plaintiff turned to wait for the shuttle bus, but security personnel and police told Plaintiff to leave the property immediately.

6

21.    Plaintiff complied with the order to leave the property and walked out to Broadway. Thereupon, he had to walk all the way, through inclement weather, to Sullivan Square T stop in order to get back to downtown Boston.

22.    On many occasions going into Encore, Plaintiff had observed people setting off the so-called "metal detector" and observed security personnel routinely harassing and intimidating patrons to search through the patrons' personal belongings, mostly senior citizen patrons, including those in wheel chairs. On several occasions Plaintiff complained to security staff that there were going too far in their actions, especially in Plaintiff's case, where he had embedded metal in his body and carried medical devices of which it was none of the casino's business to know about.

23.    Plaintiff has personal knowledge that Encore staff and their police agents working on details have a propensity and practice of intimidating some patrons under so-called "security" initiatives, resulting in assaults and other aggressive action that cause patrons, *inter alia*, stress and anxiety.

24.    At all times mentioned herein, when the casino security guard refused Plaintiff entrance to the casino without a further check, Plaintiff attempted to leave the casino grounds.

25.    Defendants restrained Plaintiff and kept him from leaving the casino grounds for approximately 15 minutes.

26.    Plaintiff felt severe anxiety and emotional distress as a result of the Defendants' action, was humiliated, embarrassed, intimidated and made an object of ridicule by the actions of the Defendants. Plaintiff was forced under the circumstances to call a lawyer. He was restrained by the Defendants, although Plaintiff had committed no crime and there was no crime involved in setting off a metal detector. Plaintiff was physically and/or forced off a shuttle bus that was taking him off the casino grounds. Plaintiff was unlawfully held restrained after he told the Defendants that he refused to cooperate with whatever they were attempting to do. Plaintiff was forced under the circumstances to walk approximately a mile in inclement weather in order to get home.

27.    On or about June 2, 2026, Plaintiff made a demand upon all the named Defendants for relief related to the above incident, all pursuant to MGL c. 93A. None of the Defendants have made a reasonable offer of settlement as of the below date.

## IV.  CLAIMS

### COUNT I
### (Violation of Civil Rights)

8

28.     Plaintiff realleges and incorporates herein the previous paragraphs as if set out here.

29.     Defendants, either acting individually, in concert with one another, or as agents of each other, violated Plaintiff's civil rights as guaranteed under the Constitution and Laws of the United States and the Massachusetts Declaration of Rights and the Laws of the Commonwealth.

30.     The Defendants, either directly, or acting in concert with one another, acted under the color or state authority.

31,     The Defendants conduct deprived Plaintiff of his rights secured under both the U.S. and Commonwealth constitutions and laws.

30.     Plaintiff had a constitutional right to be free of unlawful restraint.

31.     Plaintiff had a constitutional right to not be, *inter alia*, harassed, intimidated and suffer emotional distress.

32.     Plaintiff has a constitutional right not to be barred, under an equal protection theory, from a public place of business without just cause, nor from being illegally seized and restrained.

## COUNT II
### (Unlawful Detention and Restraint of Liberty)

33.     Plaintiff realleges and incorporates herein the previous paragraphs as if set out here.

34,    On or about May 30, 3026 the Defendants intentionally retrained Plaintiff from leaving the property of the Encore Casino as mentioned above.

25.    There was no legal justification for restraining Plaintiff from leaving the property of Encore Casino.

26.    The Plaintiff suffered great emotional stress, anxiety, and trauma because of the unlawful restraint.

## COUNT III
### (Abuse of Process)

27.    Plaintiff realleges and incorporates herein the previous paragraphs as if set out here.

28.    Defendants, either directly or through their agents, co-conspirators, and acting in concert, used police powers to restrain Plaintiff on May 30, 2026.

29,    Defendants, either directly or through their agents, co-conspirators, and acting in concert, used their police powers of restraint as noted in this complaint for an ulterior or illegitimate purpose, namely to cause Plaintiff emotional distress, harass and intimidate him into cooperating in some unknown investigation.

30.    Plaintiff had not committed any crime on May 30, 2026, nor was there any reason to suspect Plaintiff had committed a crime on said date, and therefore Defendants had no authority to use their police powers to restrain him.

## COUNT IV
### (Negligence)

10

31.   Plaintiff realleges and incorporates herein the previous paragraphs as if set out here.

32.   The Defendants owed the Plaintiff a duty of reasonable care.

33.   The Defendants breached the duty they owed to Plaintiff of reasonable care by restraining him without cause when he was attempting to leave Encore.

34.   The breach as noted above caused Plaintiff to suffer, *inter alia*, great emotional distress, anxiety and intimidation.

35.   Defendants further breached their duty to properly train their personnel.

## COUNT V
### (Intentional and/or Negligent Infliction of Emotional Distress)

36.   Plaintiff realleges and incorporates herein the previous paragraphs as if set out here.

37.   The Defendants intended to inflict emotional distress on Plaintiff, or knew or should have known that emotional distress was the likely result of their conduct in illegally restraining Plaintiff and intimidating, harassing, and trying to force him into cooperating into their fishing expedition.

38.   The conduct of the Defendants was extreme and outrageous in that Plaintiff had not committed any crime in allegedly setting off a so-called metal detector, that he had left the inside of the casino and had boarded a shuttle that was taking him off the property, but the Defendants forced him off the shuttle and restrained him from leaving without a scintilla of proof that any crime had been committed,

11

and such conduct is beyond the possible bounds of decency and utterly intolerable in a civilized community.

39.     Because of the Defendants extreme and outrageous conduct, Plaintiff suffered emotional distress that no reasonable person ought to be expected to endure.

WHEREFORE, Plaintiff seeks the following

## V.  RELIEF

A.      A Declaration that Plaintiff's constitutional rights have been violated.

B.      As to each Defendant, compensatory damages in the amount of $250,000.00

C.      As to each Defendant, punitive damages in the amount of $1,000,000.00

D.      As to each Defendant, where applicable, extra damages under MGL c. 93A

E.      The costs of this action.

F.      Reasonable attorney fees, if applicable.

H.      Such other and further relief that to the Court seems just, proper and equitable.

PLAINTIFF DEMANDS A TRIAL BY JURY.

THE PLAINTIFF

Robert M. Joost

126 BORDER ST, UNIT 330
BOSTON, MA 02128
781-816-0384

12

## Verification

Robert M. Joost hereby verifies under the pains and penalties of perjury that all the foregoing is true and accurate to the best of his recollection, and that which is stated as belief is believed to be true.